UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JACINTHA POLLARD,

       *Plaintiff*,

          - against –

 THE NEW YORK METHODIST HOSPITAL,

       *Defendant*.
----------------------------------------X

<u>**MEMORANDUM & ORDER**</u>
13-CV-3964(KAM)(RER)

**MATSUMOTO**, United States District Judge:

       Plaintiff Jacintha Pollard ("plaintiff") commenced this action against defendant the New York Methodist Hospital (the "Hospital" or "defendant"), her former employer, alleging that defendant violated plaintiff's rights under the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.*, when it terminated her employment as a result of her taking an FMLA-protected medical leave after undergoing surgery on her foot. (*See generally* Complaint dated 7/12/2013 ("Compl.").) Plaintiff seeks damages, including back pay, and reinstatement to her position at the Hospital. (Compl. at 6.) Both parties have moved summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See* ECF No. 39, Plaintiff's Motion for Summary Judgment ("Pl. Mem."); ECF No. 42, Defendant's Memorandum of Law In Support Of Motion for Summary Judgment ("Def. Mem.").) For the reasons set forth below, plaintiff's motion is denied, and defendant's motion is granted.

This case concerns a course of treatment that plaintiff sought for a growth on the side of her left foot in March 2013 and plaintiff's attempt to take medical leave in connection with that treatment. The following facts, taken from the parties' Rule 56.1 statements and the exhibits and deposition testimony cited and annexed to the parties' motion papers, are undisputed unless otherwise noted.[1] The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving party. *See Spiegel v. Schulmann*, 604 F.3d 72, 77, 81 (2d Cir. 2010).

Plaintiff was employed by defendant as a medical records file clerk from September 2000 to April 1, 2013. (ECF No. 39-2, Plaintiff's Rule 56 Statement of Material Undisputed Facts ("Pl. 56.1 Stmt.") ¶¶ 5, 7; ECF No. 41, Defendant's 56.1 Statement ("Def. 56.1 Stmt.") ¶¶ 1, 5, 7.) Plaintiff's job required her to be on her feet for most of the day. (ECF No. 39-3, Plaintiff's Declaration In Support Of Her Motion for

---

[1] The court has disregarded "facts" in each party's Rule 56.1 statements that (1) are legal conclusions, (2) are not accompanied by citation to admissible evidence, or (3) are not supported by the evidence in the record. *See RP Family, Inc. v. Commonwealth Land Title Ins. Co.*, No. 10-CV-1149, 2014 WL 1330932, at *1 (E.D.N.Y. Apr. 1, 2014).

Summary Judgment dated 12/11/14 ("Pl. Decl.") ¶¶ 14-15;[2] Pl. 56.1 Stmt. ¶ 17.)

The exact dates on which plaintiff first noticed the growth and that it started causing her pain are unknown. Plaintiff testified that she first noticed the growth between six weeks and two months prior to her consultation with her podiatrist, Dr. Manoj Sadhnani, on March 19, 2013, and that she began experiencing pain in the "weeks before going to the doctor." (Pl. 56.1 Stmt. ¶¶ 5, 7; Def. 56.1 Stmt. ¶¶ 10, 13-14; ECF No. 53, Joint Deposition Transcript Appendix ("Dep. Tr. App'x"), Ex. B., 7/9/14 Deposition of Jacintha Pollard ("Pollard Dep.") at 212.) Plaintiff testified that the growth became painful over time and that she experienced pain particularly when she would stand or walk.[3] (Pollard Dep. at 212-13.) Prior to noticing the subject growth on her foot, plaintiff had not previously had a similar condition. (Pl. 56.1 Stmt. ¶¶ 5, 7;

---

[2] Plaintiff included with her motion papers a declaration in support of her motion for summary judgment that expands upon the testimony she gave during her deposition. The court has considered plaintiff's declaration to the extent it does not contradict her prior deposition testimony. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing [her] own prior sworn testimony.").

[3] Plaintiff states that the foot pain she experienced affected her ability to walk and do her job. (Pl. Decl. ¶¶ 16-21.) She did not, however, seek any accommodation for her pain at work. (*See* ECF No. 47, Affidavit of Marcos Purcell dated 1/21/15.) Dr. Sadhnani testified that, during a March 19, 2013 appointment, plaintiff complained that she was unable to walk or wear any type of shoe. (Dep. Tr. App'x, Ex. A., 7/8/14 Deposition of Dr. Manoj Sadhnani ("Sadhnani Dep.") at 48.)

Def. 56.1 Stmt. ¶ 12.)  Although plaintiff had previously

undergone numerous foot surgeries (see Pl. 56.1 Stmt. ¶ 15), the

March 19, 2013 visit with Dr. Sadhnani, discussed further below,

was the first time plaintiff had sought medical care for the

growth on her foot.[4]  (Pl. 56.1 Stmt. ¶¶ 5, 7; Def. 56.1 Stmt. ¶¶

11, 16-17.)

### I.   Plaintiff's March 19, 2013 Visit with Dr. Sadhnani

On March 19, 2013, plaintiff visited the office of Dr.

Sadhnani regarding a growth on the side of her left foot that

was causing her pain.  (Def. 56.1 Stmt. ¶¶ 8-9; see Pl. 56.1

Stmt. ¶ 19.)  Plaintiff was working that day and walked to her

appointment from the hospital and back, a distance of a few

blocks each way.  (Def. 56.1 Stmt. ¶¶ 8, 36.)  During the visit,

Dr. Sadhnani examined plaintiff's left foot and concluded that

the growth was a benign neoplasm of soft tissue.  (Def. 56.1

Stmt. ¶ 17.)  He observed no infection in plaintiff's foot and

did not believe the mass to be cancerous.[5] (Sadhnani Dep. at 68,

231.)

---

[4] Plaintiff had visited her internist, Dr. Lalit Patel, regarding an upper
respiratory infection in February 2013, but did not report any pain in her
foot during that visit.  (Pollard Dep. at 215; see also Def. 56.1 Stmt.
¶ 15.)  Plaintiff visited Dr. Patel again on March 22, 2013 for a pre-
operative evaluation, at which point Dr. Patel recorded in his notes that
plaintiff reported an ability to walk four blocks and climb two flights of
stairs without symptoms.  (Dep. Tr. App'x, Ex. G, 7/24/14 Deposition of Dr.
Lalit Patel ("Patel Dep.") Ex. 3; Patel Dep. at 60-61.)

[5] During his deposition, Dr. Sadhnani recognized that the growth could have
been precancerous or cancerous.  (Sadhnani Dep. at 71, 199-200.)

During the visit, plaintiff was complaining of substantial pain, and Dr. Sadhnani was unable to touch the site of the growth due to plaintiff's pain. (Sadhnani Dep. at 73-74, 89.) Dr. Sadhnani testified that he offered to pare, or trim with a blade, the mass on plaintiff's foot to "see if [he could] get anything out of it," but plaintiff refused it and other conservative treatment. (*Id.* at 58-59; 73-74.) Instead, when offered various treatment options, plaintiff indicated her preference for surgery to remove the growth.[6] (Sadhnani Dep. at 65-66, Ex. 1; *see* Def. 56.1 Stmt. at 27.)

After plaintiff expressed her desire for surgical treatment, Dr. Sadhnani scheduled plaintiff's foot surgery for March 28, 2013, nine days later, which was the next appointment he had available for the procedure. (Sadhnani Dep. at 67-68; Pl. 56.1 Stmt. ¶¶ 20-21.) Dr. Sadhnani testified that it would not have been a problem for plaintiff to wait as long as 35 days to undergo surgery if she could tolerate the pain (*see* Sadhnani Dep. at 67-69); however, based on his understanding that plaintiff was in considerable pain, he wished to alleviate her

---

[6] Dr. Sadhnani did not tell plaintiff during the visit that surgery was required but advised her that some action needed to be taken. (Sadhnani Dep. at 95-96, 213; *see also* Sadhnani Dep. at 57-58, 94-95.) He testified that non-surgical treatment would not have been successful given plaintiff's pain, the size of her growth, and her fear of needles. (Sadhnani Dep. at 57-59, 87.) Dr. Sadhnani's treatment notes from the visit indicate that plaintiff "wishes surgical management. . .since all conservative management has failed" and "understands [that the proposed surgery] is purely elective." (Sadhnani Dep. at 213, Ex. 1; *see* Def. 56.1 Stmt. ¶ 27.)

pain as soon as possible.  (*See* Sadhnani Dep. at 89, 94-95, 174; *see also* Pl. 56.1. Stmt. ¶ 19.)

Although plaintiff reported being unable to stand on her feet due to pain, she did not request, and Dr. Sadhnani did not prescribe, any walking or standing aids during her visit. (Sadhnani Dep at 79.)  Dr. Sadhnani also observed that plaintiff was able to walk into and out of his office.  (*Id.* at 79, 211.) Dr. Sadhnani testified that, when he saw plaintiff on March 19, and again for her surgery on March 28, 2013, she was able to engage in normal functions, she did not appear to be incapacitated, and he was not aware that she experienced any period of incapacity.[7]  (Def. 56.1 Stmt. ¶¶ 41, 53-54.)  He did not instruct plaintiff to take any medication to manage her pain.  (Pollard Dep. at 248; Def. 56.1. Stmt. ¶ 32.)

At his deposition, Dr. Sadhnani testified that the growth on plaintiff's foot was not associated with a chronic, permanent, or long-term condition, but that there was a chance it could reoccur after treatment.[8]  (Sadhnani Dep. at 55, 109-

---

[7] When asked about his response on plaintiff's FMLA certification dated March 26, 2013, Dr. Sadhnani testified that he certified that plaintiff's condition would cause a period of incapacity because he anticipated that plaintiff would be incapacitated while healing from the scheduled surgery.  (*See* Sadhnani Dep. at 118-21.)  He clarified that, after the surgery, he advised plaintiff that she could engage in daily activities (including eating, sleeping, cooking, and moving around), but that she should avoid leaving the house and going to public places.  (*See id.* at 122-24.)

[8] Dr. Sadhnani also acknowledged the possibility that the growth could have been related to a previous surgery that he had performed on plaintiff's foot. (*See* Pl. 56.1 Stmt. ¶ 53.)

111; *see* Def. 56.1 Stmt. ¶¶ 18, 52.)  Dr. Sadhnani further

testified that he did not consider plaintiff's condition to be a

"medical emergency" and that, based on his March 19, 2013

examination, plaintiff's health was not in serious jeopardy.

(Sadhnani Dep. at 56, 232.)

## II.  Plaintiff's Communications with Human Resources Regarding Her Surgery

After plaintiff returned to work from her visit to Dr.

Sadhnani's office on March 19, 2013, she called the Hospital's

Human Resources department and advised Velta Davis, an assistant

to the hospital's leave specialist, Mabel Del Rio, of her

surgery scheduled for March 28, 2013.  (Pl. 56.1. Stmt. ¶ 24;

Def. 56.1 Stmt. ¶ 37.)  Ms. Davis informed plaintiff that she

needed to provide 30 days notice for any leave but she could

also try to provide a doctor's note corroborating the necessity

of her surgery in support of her request.  (*See* Pollard Dep. at

268-69; Dep. Tr. App'x, Ex. D, 7/21/14 Deposition of Vigian

Velta Davis ("Davis Dep.")at 17.)  Apparently, the same day,

plaintiff called and then walked over to Dr. Sadhnani's office

again to obtain a doctor's note.  (Def. 56.1. Stmt. ¶ 38;

Pollard Dep. at 267, 269.[9])  Dr. Sadhnani prepared a note for

plaintiff that stated that her surgery was scheduled for March

---

[9] Although plaintiff's declaration states that Dr. Sadhnani prepared the note
during her initial visit on March 19, 2013, her deposition testimony
indicates that she returned to the office to procure the note later that day.

28, 2013 and that her condition required "immediate surgical attention."[10]  (See Pl. 56.1. Stmt. ¶ 23; Def. 56.1 Stmt. ¶ 39.)

After obtaining Dr. Sadhnani's note, plaintiff walked back to her desk at the hospital and faxed the note to the Human Resources department.  (See Pl. 56.1. Stmt. ¶ 23; Def. 56.1 Stmt. ¶ 40.)  By letter dated March 19, 2013,[11] the hospital requested that plaintiff reschedule her surgery until a later date in order to comply with the 30-day notice requirement. (Pl. 56.1 Stmt. ¶ 25; see Pollard Dep. at 272, 275, 296-97.) There is no evidence in the record that plaintiff attempted to reschedule her surgery.[12]

On March 26, 2013, plaintiff returned to Dr. Sadhnani's office on foot, in order for him to complete FMLA certification paperwork.  (Def. 56.1 Stmt. ¶ 43.)  The completed certification listed plaintiff's qualifying serious health

---

[10] Dr. Sadhnani testified that he wrote that plaintiff required "immediate surgical attention" because of plaintiff's wish to have surgery as soon as possible rather than due to any medical emergency requiring the surgery to be completed immediately.  (Sadhnani Dep. at 218-19; Def. 56.1. Stmt. ¶ 39.)  He also testified that plaintiff did not tell him what to write on the form and that, based on his observations of her foot and the pain she was experiencing, he believed that prompt treatment was necessary.  (See Sadhnani Dep. at 94-95; 174.)

[11] Based on plaintiff's deposition testimony, it is unclear whether she received the letter on March 19 or 20, 2013.  (See Pollard Dep. at 272, 275, 296-97.)

[12] In her declaration, plaintiff states, without citation to any medical opinion, that she needed to keep her surgery date due to her pain and the difficulty she was having working.  (Pollard Decl. ¶ 28.)

condition as "Painfull lesion Lt foot" [*sic*],[13] the treatment

given as "surgery on 3/28/13," and the necessary duration of

medical leave as "3/28/13 to 4/18/13." (Declaration of Abdul

Hassan, Esq. dated 12/12/14 ("Hassan Decl.") Ex. 7.) After Dr.

Sadhnani completed the FMLA certification, plaintiff walked back

to the Hospital's Human Resources department to submit the

paperwork. (Pl. 56.1 Stmt. ¶¶ 28-29; Def. 56.1 Stmt. ¶ 44.)

That same day, the Hospital's Human Resources department

contacted Dr. Sadhnani regarding plaintiff's scheduled surgery,

without plaintiff's consent, and notified him that plaintiff's

surgery would need to be rescheduled to April 19, 2013 at the

earliest in order to comply with the hospital's notice policies.

(*See* Pl. 56.1. Stmt. ¶¶ 30-31; Sadhnani Dep. at 219-220; *see*

*also* Hassan Decl. Ex. 8.)

Upon hearing from the hospital that plaintiff's leave

had not been approved, Dr. Sadhnani cancelled plaintiff's

surgery. (*See* Pl. 56.1 Stmt. ¶ 30; Def. 56.1 Stmt. ¶¶ 56-57;

Sadhnani Dep. at 221-223.) Dr. Sadhnani testified that

plaintiff contacted him after learning that her surgery had been

cancelled and requested that her surgery proceed as scheduled on

---

[13] On the certification, Dr. Sadhnani checked the box indicating that
plaintiff's condition qualified as a category "4" serious health condition or
a "chronic condition requiring treatment." (Hassan Decl. Ex. 7; Sadhnani
Dep. at 107-109.) At his deposition, Dr. Sadhnani testified that he did not
consider plaintiff's condition to be a chronic condition. (Sadhnani Dep. at
109-110.)

March 28, 2013.[14]  (*See* Def. 56.1 Stmt. ¶¶ 57-58.)  Dr. Sadhnani

again scheduled plaintiff's surgery for March 28, 2013.

(Sadhnani Dep. at 221-222; *see* Def. 56.1 Stmt. ¶ 59.)

At no point did any employee of the Hospital request

that plaintiff submit to an independent medical examination for

a second opinion regarding her condition and the necessity of

her surgery.  (*See* Pl. 56.1 Stmt. ¶¶ 32-33.)

### III. Plaintiff's Surgery on March 28, 2013

Although she was experiencing pain from her condition,

plaintiff continued to work through March 27, 2013.[15]  (Pl. 56.1

Stmt. ¶ 27; Def. 56.1 Stmt. ¶ 46.)  Plaintiff did not report to

work on March 28, 2013, and instead appeared for her scheduled

surgery with Dr. Sadhnani that afternoon at the Allcity Family

Healthcare Surgery Center.  (Pl. 56.1 Stmt. ¶ 36, Def. 56.1

Stmt. ¶ 48.)  Dr. Sadhnani noted that he did not observe any

change in plaintiff's foot condition between her visit on March

19, 2013 and her surgery on March 28, 2013.  (Def. 56.1 Stmt. ¶

51.)  The surgery was performed without complications, and the

---

[14] During her deposition, plaintiff testified that Dr. Sadhnani had never informed her that her surgery had been canceled and only told her about receiving a call from the Hospital's Human Resources department on March 28, 2013, while plaintiff was waiting to go into surgery.  (*See* Pollard Dep. at 269-70.)

[15] During her deposition, plaintiff testified that she would have continued to work past March 28, 2013, albeit in pain, if Dr. Sadhnani had not been able to conduct the surgery on that day.  (*See* Pollard Dep. at 364-65.) Plaintiffstates in her declaration, however, that she would not have been able to continue working as of March 28, 2013 and that the growth on her foot would likely have resulted in more than three consecutive days of incapacity had she not undergone surgery to remove it.  (Pl. Decl. ¶ 34.)

mass was removed from plaintiff's foot.  (*See* Hassan Decl. Ex. 9.)

Plaintiff received stitches at the site of the removal.  (*See* Pl. 56.1 Stmt. ¶ 37.)  Dr. Sadhnani instructed plaintiff to wear a surgical shoe while she recovered and prescribed plaintiff Vicodin for pain and antibiotics to prevent infection.  (Pl. 56.1 Stmt. ¶¶ 48-50; Sadhnani Dep at 112-13; Hassan Decl. Ex. 11.)  The surgery was an outpatient procedure, and plaintiff did not stay overnight at the hospital.  (Def. 56.1 Stmt. ¶ 49.)

**IV.  Plaintiff's Follow-Up Visits with Dr. Sadhnani**

After the surgery, Dr. Sadhnani advised that plaintiff should return for a follow-up visit in one week.  (Pl. 56.1 Stmt. ¶ 41.)  Plaintiff's next appointment with Dr. Sadhnani was scheduled for April 6, 2013, nine days after her surgery, which, according to plaintiff, was the earliest available appointment. (Pl. 56.1 Stmt. ¶ 43.)  Plaintiff did not report to work in the days following her surgery.  (*See* Pl. 56.1 Stmt. ¶ 39; Def. 56.1 Stmt. ¶ 48.)  Dr. Sadhnani testified that he generally preferred that foot surgery patients not return to work until their stitches had been removed, usually after two to three weeks. (Sadhnani Dep. at 105, 197.)

Plaintiff did not require any further treatment for the benign neoplasm on her foot after it was removed on March

28, 2013.  (Def. 56.1 Stmt. ¶¶ 55, 61; Pollard Dep. at 365.)

Plaintiff visited Dr. Sadhnani on April 6, 2013 for post-

surgical follow-up, at which time he changed the dressing on and

examined the healing of her surgery site.  (*See* Pl. 56.1 Stmt.

¶ 44; Def. 56.1 Stmt. ¶ 62.)   Dr. Sadhnani saw plaintiff again

on April 13, 2013, 16 days after her surgery, at which time Dr.

Sadhnani removed plaintiff's sutures and again changed the

dressing.  (*See* Pl. 56.1 Stmt. ¶ 44; Def. 56.1 Stmt. ¶ 62-63.)

At the April 13, 2013 visit, Dr. Sadhnani cleared plaintiff to

resume working beginning on April 18, 2013.[16]  (Pl. 56.1 Stmt. ¶

45.)

## V.    Plaintiff's Employment Consequences

On or about April 2, 2013, plaintiff's employment was

terminated due to her failure to appear for work on March 28,

2013, the day of her surgery, after she had been denied approval

for medical leave.  (*See* Pl. 56.1 Stmt. ¶ 13, Def. 56.1 Stmt. ¶

60.)   Plaintiff admitted that she did not comply with the

defendant's 30-day notice requirement under its FMLA policy.

(Pollard Dep. at 181-82.)   Plaintiff applied for unemployment

benefits after her termination, which were granted over

defendant's objection.  (*See* Pl. 56.1 Stmt. ¶¶ 62-64.)   In the

unemployment proceedings, defendant argued that plaintiff was

---

[16] Dr. Sadhnani testified that plaintiff could have returned to work sooner,
but he generally advises surgery patients not to return to work until their
sutures have been removed.  (Sadhnani Dep. at 124, 127.)

12

not entitled to benefits because she committed misconduct by not following the Hospital's policy regarding notice for medical leaves.  (*See* Pl. 56.1 Stmt. ¶ 63.)  The award of benefits was upheld on appeal.  (Pl. 56.1 Stmt. ¶¶ 65-67.)

**LEGAL STANDARD**

### I.    Summary Judgment

"Summary judgment is appropriate where there is no genuine issue as to any material fact and . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (internal citations and quotation marks omitted).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal citations and quotation marks omitted).  "A fact is material when it might affect the outcome of the suit under governing law."  *Id.* (internal citations and quotation marks omitted).  Moreover, an issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56[] to set forth specific facts showing that there is a genuine issue of material fact to be tried." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993).  The nonmoving party may not, however, "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading."  *Id.* at 532–33 (internal citations and quotation marks omitted); *see also Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) ("Reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment.").

## II.  The Family and Medical Leave Act

The FMLA provides an eligible employee with the right to take up to 12 weeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The Act defines "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A)-(B).

An eligible employee who takes leave from work pursuant to the FMLA because of a serious health condition is entitled, upon return from such leave, "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to a position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). It is unlawful for an employer to interfere with, restrain, or deny an eligible employee the rights provided for in the Act. 29 U.S.C. § 2615(a)(1).

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that (1) she exercised rights protected under the FMLA, (2) she was qualified for the position, (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v, City of New York,* 365 F.3d 165, 168 (2d Cir. 2004); *accord Reilly v. Revlon Inc.,* 620 F. Supp. 2d 524, 537–38 (S.D.N.Y. 2009).

### III. Continuing Treatment by a Healthcare Provider

The Department of Labor has promulgated regulations, *see* 29 C.F.R. Subt. B., Ch. V, Subch. C, Pt. 825, Subpt. A (the

"Regulations"), that explain the nature of impairments that constitute "a serious health condition involving continuing treatment by a health care provider" for purposes of the FMLA. The Regulations outline five categories of such conditions: incapacity and treatment, pregnancy or prenatal care, chronic conditions, permanent or long-term conditions, and conditions requiring multiple treatments.  *See* 29 C.F.R. § 825.115(a)-(e).

The court finds that the first and fifth categories are relevant based on the record, which establishes that plaintiff's foot growth is unrelated to pregnancy and not a chronic, permanent, or long-term condition.  The first enumerated category of serious health conditions involving continuing treatment--incapacity and treatment--is defined as:

> a period of incapacity[17] of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> > (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist,[18] by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

---

[17] For purposes of the Regulations, "incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  29 C.F.R. § 825.113(b).

[18] 29 C.F.R. § 825.115(a)(5) provides that the term extenuating circumstances as used in this paragraph means "circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30-day period, but the health care provider does not have any available appointments during that time period."

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a)(1)-(2).  The requirement in § 825.115(a)(1) and (a)(2) that the subject receive treatment from a health care provider "means an in-person visit to a health care provider."  The regulation further specifies that "[t]he first (or only) in-person treatment visit must take place within seven days of the first day of incapacity."  29 C.F.R. § 825.115(a)(3).

The fifth enumerated category of serious health conditions involving continuing treatment--conditions requiring multiple treatments--includes:

> Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, for:
>
> (1) Restorative surgery after an accident or other injury; or
>
> (2) A condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).

29 C.F.R. § 825.115(e)(1)-(2).

Under the Regulations, "treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition."  29 C.F.R. § 825.113(c).  A "regimen of continuing treatment" may include, "for example, a course of prescription medication (e.g., an

antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition." *Id.* However, a "regimen of continuing treatment" that includes "the taking of over-the counter medications ... or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for the purposes of FMLA leave." *Id.*

## IV.  Notice

In order to be protected by the FMLA, an employee must provide her employer with notice of her absence. *See* 29 U.S.C. § 2612(e). In the case of a foreseeable leave, notice should be given at least 30 days in advance if possible, or "as soon as practicable." *Id.* at § 2612(e)(2). An employer is expressly authorized to require an employee "to comply with the employer's usual and customary notice and procedural requirements for requesting leave." *Id.* at § 825.302(d). "When the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." *See Ode v. Mount Sinai Med. Ctr.*, No. 04 CIV. 9632, 2006 WL 1711508, at *5 (S.D.N.Y. June 22, 2006) (quoting 29 C.F.R. § 825.303(a)).

## **APPLICATION**

Defendant argues that it is entitled to summary judgment on plaintiff's FMLA claim because (1) the growth on her foot was not a serious health condition within the meaning of the FMLA (*see* Def. Mem. at 11-24) and (2) she failed to give sufficient notice under the statute before taking leave (*see* Def. Mem. at 24-26).  Plaintiff counters that (1) the growth on her foot was a serious health condition under the FMLA and accompanying regulations (or, in the alternative, that the surgery on her foot created a serious health condition) (*see* Pl. Mem. at 18-24), and (2) she gave appropriate notice for her leave (*see* Pl. Mem. at 14-18).

Plaintiff also seeks summary judgment on her FMLA claim as to both liability and damages.  In addition to her positions that the mass on her foot constituted a serious health condition for purposes of the statute and that she gave sufficient notice in advance of taking leave, plaintiff argues that the serious health condition and notice elements of her FMLA claim are established as a matter of law by (1) defendant's failure to seek a second medical opinion regarding plaintiff's condition (*see* Pl. Mem. at 7-12) and (2) an administrative ruling granting plaintiff unemployment benefits after her termination (*see* Pl. Mem. at 12-13).  As discussed below, the court finds that, as a matter of law, plaintiff cannot

19

demonstrate that the benign mass on her foot and related surgery constituted a serious health condition within the meaning of the FMLA and therefore grants summary judgment in favor of defendant.

## I.   Absence of Second Medical Opinion

As an initial matter, plaintiff argues that the serious medical condition and notice elements of her claim are established as a matter of law because defendant never procured a second medical opinion to dispute the FMLA certification completed by Dr. Sadhnani in advance of plaintiff's surgery. (*See* Pl. Mem. at 7-12.)

29 U.S.C. § 2613(c) provides that:

> [i]n any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) for leave under subparagraph (C) or (D) of section 102(a)(1), the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (c) for such leave.

*See also* 29 C.F.R. § 825.307.  As acknowledged by several circuit courts, the plain language of the statute illustrates that an employer "may require" a second medical opinion, at its own expense.  *See, e.g.*, *Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 902 (8th Cir. 2010); *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 580 (6th Cir. 2007); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 385-86 (4th Cir. 2001); *see also Porter v. New York Univ. Sch. of Law*, No. 99 CIV. 4693, 2003 WL 22004841, at *7-8

(S.D.N.Y. Aug. 25, 2003). The court is not aware of, and

plaintiff fails to cite, any binding caselaw indicating that an

employer that does not seek a second certification waives any

future challenges to an employee's eligibility under the FMLA.[19]

An employer that declines to seek a second medical opinion

before taking adverse employment action against an employee

risks a reviewing court ultimately determining that the employer

violated its employee's FMLA rights; nonetheless, there is no

indication that the FMLA precludes that employer from ever

challenging the existence of an FMLA-qualifying condition. *See*

*Murphy*, 618 F.3d at 902.

---

[19] The out-of-circuit cases cited by plaintiff do not support plaintiff's
position. In *Thorson v. Gemini, Inc.*, 205 F.3d 370 (8th Cir. 2000), the
Eighth Circuit upheld a district court's grant of summary judgment in favor
of the plaintiff after finding that the defendant employer "cannot show that
there is a genuine issue of fact regarding [the plaintiff's] incapacity
during the February absences, although [the defendant] may have been able to
do so (or even prevail on this issue) had it availed itself of the
protections provided for within the FMLA." *Id.* at 382. The court noted that
the defendant's medical evaluations of plaintiff completed months later and
for the purpose of litigation could not create a material fact issue in the
face of contemporaneous notes from the plaintiff's treating physician
regarding her capacity to work at the time of her absence. *Id.* Here, as
discussed below, the undisputed facts from plaintiff and her treating
physician demonstrate that plaintiff was not entitled to leave under the
FMLA. The court in *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309 (7th Cir.
1998), affirmed a district court's grant of summary judgment in favor of the
defendant where the plaintiff's doctor had indicated on an FMLA certification
form that the plaintiff was not entitled to leave and plaintiff did not rebut
that certification in any way. *Id.* at 312-13. Finally, in light of the
numerous circuit courts that have found the second certification provision of
the FMLA to be permissive, the court finds declines to follow *Sims v.
Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253 (N.D. Cal. 1998),
which held that "where the employer did not seek a subsequent medical opinion
within a reasonable time period after the employee submitted his initial
certification of a serious health condition, the employer may not now
challenge . . . the validity of the initial medical certification submitted
by the employee." *Id.* at 1255.

Plaintiff argues that the second sentence of 29 C.F.R. § 825.307(b)(1) and a 1996 Department of Labor opinion letter (*see* Hassan Decl. Ex. 4) necessitate a finding that plaintiff's FMLA claim is established as a matter of law. The relevant portion of 29 C.F.R. § 825.307(b)(1) states that "[p]ending receipt of the second (or third) medical opinion, the employee is provisionally entitled to the benefits of the Act. . . ." In this case, as acknowledged by plaintiff, no second or third medical opinion was sought by defendant. Furthermore, the language that plaintiff points to in the opinion letter, which is non-binding, does not state that an employer is required to seek a second medical opinion in order to ever challenge a plaintiff's eligibility for FMLA leave, but states only that an employer that disputes the contents of a medical certification should generally seek a second opinion. (*See* Hassan Decl. Ex. 24 ("If Name* wished to dispute this certification, it should have sought a second opinion under the terms of the Regulations; the certification, assuming it was properly completed and timely submitted, should not have been rejected unilaterally.").)

In support of her theory, plaintiff also cites *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001), a case that plaintiff acknowledges does not present the same facts or legal issues as this case. (*See* Pl. Mem. at 10.) In *Kosakow*, the Second Circuit affirmed the district

court's finding that a plaintiff's employer was equitably

estopped from challenging that plaintiff was an "eligible

employee" under the FMLA due to the employer's failure to post

required notices regarding hours necessary for eligibility.

*Kosakow*, 274 F.3d at 727.  The Second Circuit stated:

> Read together, these provisions [29 C.F.R. §§ 825.110(d)
> and 825.219(a)] indicate that an employee can generally
> assume that she is protected by the FMLA unless informed
> otherwise.  Accordingly, an employer who remains silent
> when its employee announces that she plans to take medical
> leave is effectively misleading that employee into
> believing that she is protected by the FMLA.

*Id.* at 726.  In this case, the undisputed facts indicate that

defendant was not silent regarding plaintiff's plans to take

medical leave.  Although plaintiff argues that the court should

interpret as silence defendant's failure to obtain a second

medical opinion in the two days between plaintiff furnishing a

certification to Human Resources and failing to appear for work,

there is undisputed evidence in the record from both plaintiff

and defendant that plaintiff was informed before her surgery on

March 28, 2013 that her leave was not approved.  Accordingly,

any analogy to the *Kosakow* court's holding regarding estoppel is

unavailing.[20]

---

[20] Both parties also cite *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81,
87 (2002), in support of their positions.  In *Ragsdale*, the Supreme Court
invalidated a Department of Labor regulation not at issue in this case as
beyond the power of the Secretary of Labor and inconsistent with the remedial
nature of the statute.  *Id.* at 85-86.  Because the court finds that defendant
is not barred from challenging plaintiff's eligibility for leave as a result
of its failure to seek a second medical opinion, and that plaintiff cannot

Finally, as discussed further below, plaintiff is unable to demonstrate that she was entitled to FMLA-protected leave.  Any failure by defendant to seek a second medical opinion does not relieve plaintiff of her burden to establish the elements of her claim.

## II.  Unemployment Insurance

Plaintiff argues that this court should "give collateral estoppel effect to the [New York State Unemployment Insurance Appeal Board's] finding that plaintiff did not violate the FMLA's notice and serious health condition requirements." (Pl. Mem. at 13.)  First, the court notes that the Appeal Board Administrative Law Judge (the "ALJ") did not make any such finding.  The ALJ overruled defendant's objection that plaintiff should be disqualified from receiving unemployment benefits because she lost her employment through misconduct.  (*See* Hassan Decl. Ex. 17 at 5.)  The ALJ concluded that, even if plaintiff had violated a workplace policy by failing to give thirty days notice of her leave, that failure did not "rise to the level of misconduct" based on plaintiff's medical documentation and testimony regarding her pain.  (*Id.* at 3-5.)  Furthermore, the ALJ's decision did not address even in passing the FMLA's serious health condition requirement.  (*See id.*)  Thus,

---

establish her eligibility for leave as a matter of law, the court does not address the parties' *Ragsdale* arguments.

plaintiff cannot demonstrate the identity of issue necessary for preclusion by collateral estoppel to apply.  *See Kosakow*, 274 F.3d at 730 ("there must be an 'identity of issue which has necessarily been decided in the prior action and is decisive of the present action'") (quoting *Schwartz v. Public Adm'r,* 24 N.Y.2d 65 (N.Y. 1969)).

Even if the Appeal Board had made a finding regarding whether plaintiff gave adequate notice or had a serious health condition under the FMLA, the New York State Labor Law prohibits unemployment proceedings from having preclusive effect in subsequent litigation.  Section 623(2) of the Labor Law provides:

> No finding of fact or law contained in a decision rendered
> pursuant to this article by a referee, the appeal board or a
> court shall preclude the litigation of any issue of fact or law
> in any subsequent action or proceeding; provided, however, that
> this subdivision shall not apply to causes of action which (i)
> arise under this article, (ii) seek to collect or challenge
> liability for unemployment insurance contributions, (iii) seek to
> recover overpayments of unemployment insurance benefits, or (iv)
> allege that a claimant or employer was denied constitutional
> rights in connection with the administrative processing, hearing,
> determination or decision of a claim for benefits or assessment
> of liability for unemployment insurance contributions.

N.Y. Lab. Law § 623(2); *see also Henry v. Concord Limousine, Inc.*, No. 13-CV-0494, 2014 WL 297303, at *7 (E.D.N.Y. Jan. 24, 2014) ("Applying this statute, numerous district courts in this Circuit and state courts in New York have declined to give preclusive effect to decisions rendered in unemployment proceedings.").  Since none of the enumerated exceptions to

section 623(2) apply to this case, the ALJ's findings do not preclude defendant from challenging whether plaintiff had a serious health condition under the meaning of the FMLA or provided her employer with adequate notice of her leave.[21]

## III. Serious Health Condition

Defendant does not dispute that plaintiff was an eligible employee, that defendant is an employer for purposes of the FMLA, or that plaintiff was terminated for failing to appear for work on March 28, 2013, after being denied leave to have surgery on her foot. Defendant argues, however, that it is entitled to summary judgment because plaintiff cannot demonstrate that she had a serious health condition within the meaning of the Act or that she provided adequate notice of her intent to take leave under the Act; consequently, defendant argues, plaintiff's absence from work on March 28, 2013 was not protected under the FMLA as a matter of law and her retaliation claim must fail. The court agrees that the uncontroverted evidence in the record of "continuing treatment" is insufficient

---

[21] Plaintiff argues that the Second Department's decision in *Dailey v. Tofel, Berelson, Saxl & Partners, P.C.*, 273 A.D.2d 341, 342 (N.Y. App. Div. 2000), dictates that this court should give preclusive effect to the Appeal Board's findings. Although the court in *Dailey* found that the plaintiff was precluded from claiming wrongful termination where the New York State Department of Labor had found that the plaintiff left her job for medical reasons, in this case, the findings made by the Appeal Board do not dispose of defendant's arguments. The other cases cited by plaintiff--*Ryan v. New York Telephone Co.*, 62 N.Y.2d 494 (N.Y. 1984) and *Hill v. Coca Cola Bottling Co. of New York*, 786 F.2d 550, 553 (2d Cir. 1986) predate the passage of N.Y. Labor Law § 623(2) in 1987.

to establish a serious health condition under the FMLA and relevant regulations.  Accordingly, the court does not address defendant's notice argument.

### A.   29 C.F.R. § 825.115(a): Incapacity and Treatment

As a threshold requirement, in order for plaintiff to qualify as having a serious health condition under 29 C.F.R. § 825.115(a), she must have had "[a] period of incapacity of more than three consecutive, full calendar days."  The undisputed evidence before the court indicates that plaintiff did not take any time off from work due to the growth on her foot either prior to her leave request or the day of her surgery. Furthermore, her treating physician, Dr. Sadhnani, and primary care physician, Dr. Patel, both saw plaintiff in the week prior to her surgery and observed that she was able to walk without the use of any aids.  Plaintiff argues instead that her incapacity began on March 28, 2013, the day the growth was surgically removed from her left foot.  *See* 29 C.F.R. § 825.113(b) ("incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom"). After plaintiff's surgery, Dr. Sadhnani told her that she could perform daily living activities but cautioned her against leaving the house or going to public places.  (*See* Sadhnani Dep. at 122-24.)  Other than the post-operative instructions from Dr.

27

Sadhnani, plaintiff has not submitted evidence that she was incapacitated for at least three days following her surgery.

Furthermore, plaintiff has not submitted evidence that she was treated by a health care provider at least twice in the thirty days following her surgery, s*ee* 29 C.F.R. § 825.115(a)(1), nor that she was treated by a health care provider on at least one occasion, resulting in a regimen of continuing treatment under the supervision of that provider, *see* 29 C.F.R. § 825.115(a)(2). The deposition testimony provided by both plaintiff and Dr. Sadhnani, as well as the FMLA certification completed by Dr. Sadhnani, indicate that the treatment of plaintiff's condition was complete once the growth was removed from her foot. (*See* Pollard Dep. at 365; Sadhnani Dep. at 113-14; Hassan Decl. Ex. 7.) Although Dr. Sadhnani prescribed plaintiff painkillers and prophylactic antibiotics and instructed her to wear a surgical shoe at the time of her surgery, none of the medication or devices was prescribed to treat the growth on plaintiff's foot.[22] Dr. Sadhnani admitted at

---

[22] Plaintiff cited *Miller v. AT & T Corp.*, 250 F.3d 820 (4th Cir. 2001), and *Jones v. Denver Pub. Sch.*, 427 F.3d 1315 (10th Cir. 2005), for the proposition that plaintiff's follow-up visits with Dr. Sadhnani constituted treatment of her foot condition. In *Miller*, the Fourth Circuit denied the defendant's challenge to the validity of the regulatory definition of "treatment" as overbroad and disagreed with the dissent's conclusion that "treatment" does not include mere evaluations of a condition. *Miller*, 250 F.3d at 834. In *Jones*, the court observed that the plaintiff's follow-up doctor's visits regarding his ongoing back pain constituted treatment but ultimately found that the timing of those visits indicated that the plaintiff did not have a serious health condition as defined by the Regulations.

his deposition that he provided no further treatment for plaintiff's condition.  (Sadhnani Dep. at 113.)

Moreover, even if plaintiff's follow-up visits with Dr. Sadhnani on April 6, 2013, to change the dressing on the surgery site, and April 13, 2013, to remove plaintiff's stitches could be considered "treatment" of the already-removed growth, plaintiff still would not be able to establish a disputed issue for trial as to a serious health condition under either 29 C.F.R. § 825.115(a)(1) or (a)(2) because the April 6, 2013 visit did not "take place within seven days of the first day of incapacity."  *See* 29 C.F.R. § 825.115(a)(3).  Plaintiff's April 6, 2013 appointment with Dr. Sadhnani occurred nine days after the day of her surgery, which was the first day of any incapacity.

Plaintiff argues that she can nonetheless satisfy this requirement because the April 6, 2013 visit falls within an "extenuating circumstances" exception to the seven-day rule, and Dr. Sadhnani's schedule was an extenuating circumstance preventing her from seeing him within a week of her surgery. (*See* Pl. Mem. at 21-22.)  Plaintiff cites no authority for her argument, which fails under the plain language of the Regulations.  Although 29 C.F.R. § 825.115(a)(1) provides an

---

*Jones*, 427 F.3d at 1322-23.  Furthermore, both *Miller* and *Jones* predate the January 2009 effective date of 29 C.F.R. § 825.115(a)(3), discussed below, which is also fatal to plaintiff's claim.

"extenuating circumstances" exception to the requirement that a plaintiff be treated at least twice within thirty days of incapacity, 29 C.F.R. § 825.115(a)(3) provides no such exception for the requirement that the first treatment take place within seven days of the onset of incapacity. Accordingly, because plaintiff did not see Dr. Sadhnani again for nine days after her surgery, she is unable to establish a serious health condition under either 29 C.F.R. § 825.115(a)(1) or (a)(2).

To avoid a finding that plaintiff failed to raise a triable issue as to whether she had a serious health condition, plaintiff argues that the cutting of her foot to remove the growth was the serious health condition that she experienced, and that the stitches administered by Dr. Sadhnani after removal of the growth constitute same-day continuing treatment of the open wound. Plaintiff's creative argument is unavailing. The record is clear that her health condition was a painful growth, mass, or lesion, and it was treated by its removal. The stitches administered during surgery were a necessary part of the same surgical event and do not constitute independent treatment of the growth.[23] Accordingly, on the undisputed record

---

[23] Plaintiff argues that such a determination would render an open-heart surgery patient ineligible for the FMLA's protections. Not so. The court merely finds that plaintiff cannot subdivide her surgery into both the onset of her incapacity and the first subsequent treatment. If plaintiff's incapacity is her recovery from surgery, the surgery itself cannot logically constitute an additional treatment. In any event, this court's conclusion

evidence viewed in the light most favorable to plaintiff, plaintiff cannot establish that she had a serious health condition for which she received continuing treatment under 29 C.F.R. § 825.115(a)(1) or (2).

**B.    29 C.F.R. § 825.115(e): Condition Requiring Multiple Treatments**

Plaintiff also argues that she has demonstrated a serious health condition involving continuing treatment under 29 C.F.R. § 825.115(e)(1) or (e)(2). Subsection (e) describes a condition requiring multiple treatments as "[a]ny period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider. . . ." As discussed above, plaintiff received only one treatment for the growth on her foot: the surgery on March 28, 2013.[24]

---

regarding the circumstances of plaintiff's condition would not prevent an open heart surgery patient or a patient receiving any other type of inpatient hospital treatment from satisfying the statutory definition of a serious health condition set forth in 29 U.S.C. § 2611(11)(A).

[24] The court also notes that subsections (e)(1) and (e)(2) specify the two circumstances under which a patient may qualify as having a serious health condition pursuant to § 825.115(e):

> (1) Restorative surgery after an accident or other injury; or

> (2) A condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).

29 C.F.R. § 825.115(e)(1)-(2). With regard to subsection (e)(1), plaintiff has not provided any evidence or raised a triable issue of fact as to whether the mass on her foot was caused by injury or accident. With regard to

Finally, plaintiff asserts that her circumstances were a "textbook example" of a serious health condition: "the treatment and incapacity caused by the surgery, treatment and recovery." The court does not doubt that there are medical conditions treated by surgery that qualify as serious health conditions under the Act, but the cases plaintiff cites are inapposite. Although the plaintiff in *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134 (2d Cir. 2012), did in fact take leave for his gallbladder surgery and subsequent recovery, the only challenge to the plaintiff's FMLA eligibility was whether he had worked the necessary hours to qualify as an eligible employee under the Act. *Id.* at 137. In *Victorelli v. Shadyside Hosp.*, 128 F.3d 184 (3d Cir. 1997), the Third Circuit found that there was a material issue of fact whether the plaintiff's peptic ulcer disease satisfied the regulatory standard for a chronic health condition, a provision not at issue in this case.[25] *Id.* at 189-90.

---

subsection (e)(2), the only evidence adduced by plaintiff that her condition would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment is the speculative statement in her own declaration stating the same (*see* Pl. Decl. ¶ 34), which contradicts the testimony she gave at her deposition. Furthermore, the examples provided in subsection (e)(2) of conditions requiring multiple treatments--cancer (treated by chemotherapy, radiation, etc.), severe arthritis (treated by physical therapy), and kidney disease (treated by dialysis)--stand in stark contrast to the benign mass on plaintiff's foot, which, albeit painful, was scheduled to be and ultimately was treated by a single surgical removal.

[25] The language that plaintiff quotes from *Victorelli* in her memorandum (*see* Pl. Mem. at 19) appears to be from the Eighth Circuit's decision in *Caldwell*

On this record, viewed in the light most favorable to plaintiff, no reasonable factfinder could conclude that plaintiff established that the growth on her foot was a health condition for which she received "continuing treatment" as defined by 29 C.F.R. § 825.115(a) or (e).[26] As a result, summary judgment for the defendant is appropriate. Because the court finds that plaintiff cannot establish a prima facie case for her FMLA retaliation claim, the court denies plaintiff's motion for summary judgment.

---

*v. Holland of Texas, Inc.*, 208 F.3d 671, 676 (8th Cir. 2000). In *Caldwell*, the Eighth Circuit determined that the district court erred in granting summary judgment to the defendant where the plaintiff submitted sufficient evidence of post-incapacity treatment to create a material issue of fact. *Id.* at 676-77. Because *Caldwell* predates the seven day requirement in 29 C.F.R. § 825.115(a)(3), the court did not have the opportunity to consider the timing of the patient's first treatment after the start of the incapacity.

[26] Plaintiff does not contend that her condition falls under any of the other regulatory categories of serious health conditions involving continuing treatment by a health care provider enumerated in 29 C.F.R. § 825.115.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is denied in its entirety, and defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court is respectfully requested to enter judgment in favor of defendant and close this case.

**SO ORDERED.**

Dated:     September 29, 2015
           Brooklyn, New York

                                    _____/s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge